UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JESSICA BERGER AND TIMOTHY RENDAK,

    Plaintiffs,

    v.

PERRY'S STEAKHOUSE OF ILLINOIS, LLC; HOWARD CORTES; AND JEFFERY PAGNOTTA,

    Defendants.

No. 14 C 8543

Judge Thomas M. Durkin

**MEMORANDUM OPINION AND ORDER**

Jessica Berger and Timothy Rendak worked as table-servers at Perry's Steakhouse and Grille in Oak Brook, Illinois. They allege that Perry's and their managers, Howard Cortes and Jeffery Pagnotta, failed to pay them all the tips which they were owed, and required them to perform non-table-service related work at less than minimum wage, in violation of the federal Fair Labor Standards Act and the Illinois Minimum Wage Law. Plaintiffs have moved for partial class and collective action certification. R. 188. For the following reasons, that motion is granted.

**Background**

Plaintiffs have three primary claims: (1) the "tip credit" claim, alleging that Defendants had a policy of pooling tips given to table-servers and impermissibly

keeping some of the tips to pay certain business expenses;[1] (2) the "tip refund" claim, alleging that in addition to business expenses, Defendants had a policy of impermissibly deducting more than necessary from the tip pool to cover (or "refund") credit card processing fees; and (3) the "sidework" claim, alleging that Defendants impermissibly required Plaintiffs to perform "sidework," i.e., non-table-service related tasks (such as tasks related to opening and closing the restaurant), at less than minimum wage. Plaintiffs also allege that Defendants failed to give them notice of the "tip credit" and "tip refund" policies, as required by the FLSA. *See* 29 U.S.C. § 203(m) (the provisions permitting lower base wages for tipped employees "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection").

Plaintiffs do not at this time seek certification of a class or collective action with regard to whether Defendants' "tip credit" policy was legal. *See* R. 188 ¶ 1. However, Plaintiffs do seek certification of a collective action regarding their claim that Defendants provided insufficient *notice* of the "tip credit" policy. Plaintiffs also seek certification of Rule 23 classes and FLSA collective actions on their "tip refund" and "sidework" claims. Plaintiffs identify the following three classes/collective actions:

---

[1] "Federal and state laws provide that tips count toward the minimum wage and permit employers to pay less in the expectation that tips will make up the difference." *Schaefer v. Walker Bros. Enters.*, 829 F.3d 551, 553 (7th Cir. 2016). "Both statutes require some cash payment from the employer, however, no matter how much a worker receives in tips." *Id.* "This is called the *tip-credit* rate." *Id.* (emphasis added). Hence, the name of Plaintiffs' first claim.

> Sub-Class One – Tip Credit Notification (FLSA): All persons employed by Defendants in the occupation of "Server," from September 1, 2013, to present, who were paid by Defendants at the sub-minimum wage, tip credit rate.
>
> Sub-Class Two – Tip Refund (FLSA, IMWL, and Unjust Enrichment): All persons employed by Defendants as Servers who were paid at the sub-minimum wage, tip credit rate and were subjected to Defendants' "Tip Refund" policy.
>
> Sub-Class Three – Sidework (FLSA, IMWL, and Unjust Enrichment): All persons employed by Defendants as Servers, from September 1, 2013, through Present, who were paid at the sub-minimum wage, tip credit rate and performed Sidework duties.

R. 188 at ¶ 7. Since only the FLSA has a notification requirement, Plaintiffs seek certification of only a FLSA collection action for the "tip credit notification" claim. By contrast, both the FLSA and Illinois law regulate using tips to cover credit card processing fees and the proper wage for sidework, so Plaintiffs seek certification of both Rule 23 classes and FLSA collective actions for those claims. The Court addresses the Rule 23 classes first, followed by the FLSA collective actions.

## Analysis

### I. Class Actions: Sub-Classes Two & Three

#### A. Legal Standard

A party seeking to certify a class action must show that the putative class satisfies the four prerequisites of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation. The action must also satisfy at least one of the three subsections of Rule 23(b). Here, Plaintiffs seek

certification under subsection (3), which requires a finding that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." District courts have "broad discretion" in determining whether a proposed class satisfies Rule 23. *See Howland v. First Am. Title Ins. Co.*, 672 F.3d 525, 528 (7th Cir. 2012). However, "certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

"Plaintiffs bear the burden of showing that a proposed class satisfies the Rule 23 requirements." *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 811 (7th Cir. 2012). "The Rule does not set forth a mere pleading standard," rather, the plaintiff must satisfy Rule 23 "through evidentiary proof." *Comcast*, 569 U.S. at 33. "It is sufficient if each disputed requirement has been proven by a preponderance of evidence." *Messner*, 669 F.3d at 811. This does not mean that "the court should . . . turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Id.* Yet, "[i]f there are material factual disputes, the court must receive evidence . . . and resolve the disputes before deciding whether to certify the class." *Id.* "Such an analysis will frequently entail overlap with the merits of the plaintiff's underlying claims," *Comcast*, 569 U.S. at 33-34, but "merits questions may be considered . . . only to the extent . . . that they are relevant to determining whether

4

the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 466 (2013).

### B. Sub-Class Two: Tip Refund Claim

#### 1. Numerosity

Defendants do not dispute that they had a tip refund policy regarding credit card processing fees. Defendants employed 41 individual table-servers in the month of December 2013 alone. This is sufficient to satisfy the numerosity requirements. *See Pruitt v. City of Chicago*, 472 F.3d 925, 926-27 (7th Cir. 2006) ("Sometimes 'even' 40 plaintiffs would be unmanageable . . . ."); *Shields v. Local 705, Int'l Bhd. of Teamsters Pension Plan*, 188 F.3d 895, 897 (7th Cir. 1999) (noting that class consisted of the class representative "and 35 other[s]"); *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n. 9 (7th Cir. 1969) ("Even if the class were limited to 40 . . . that is a sufficiently large group to satisfy Rule 23(a)."); *Costello v. BeavEx Inc.*, 2014 WL 1289612, at *8 (N.D. Ill. Mar. 31, 2014) ("A class consisting of more than 40 members generally satisfies the numerosity requirement of certifying a class action.").

#### 2. Commonality

Defendants admit that they had a policy of retaining 3.25% of all credit card tips paid to table-servers to offset the expense of converting the tip to cash. *See* R. 189-3 at 10 (interrogatory response). Plaintiffs cite Defendants' December 2013 credit card processing fee statement to assert that Defendants paid only a 1.8% fee to process credit card charges. *See* R. 189 at 5. The Court's review of this document

5

shows total credit card sales of $543,304.46 and total "interchange" fee of $10,990.91. *See* R. 189 (Ex. W). This is a 2% fee. In any case, it is less than the 3.25% Defendants withheld from table-servers. Whether retention of 3.25% of tips violates the FLSA and the IMWL is a question common to all table-servers who were subject to the retention policy. *See Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 246 (5th Cir. 2016) (affirming judgment in a class action claim that a restaurant retained a greater percentage of tips than necessary to offset credit card processing fees).

"Defendants challenge Plaintiffs' blanket statement that Defendants withheld tips 'belonging to Plaintiffs,'" and "Plaintiffs' blanket statement characterizing narrowly the appropriate expenses to be considered in comparing a credit card tip offset fee to the cost of 'clearing a tip.'" R. 195 at 18. But these are arguments that go to the answer to the common question regarding the legality of Defendants' tip refund policy (i.e., the merits), and do not undermine the existence of the common question itself. *See Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 376 (7th Cir. 2015) ("A proposed class of plaintiffs must prove the *existence* of a common question, and one that predominates over individual questions, but it need not prove that the answer to that question will be resolved in its favor.") (emphasis in original).

In addition to their claims under the FLSA and IMWL, Plaintiffs bring a claim for unjust enrichment. Defendants argue that the evidence discovered so far shows that agreements existed which undermine any unjust enrichment claims.

6

Again, this is an argument that goes to the merits of the claim not to whether there is a common question amenable to class treatment.

### 3. Typicality

"A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [the] claims are based on the same legal theory." *Arreola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008). Plaintiffs' claims arise from their work for Defendants as servers, and the putative class is defined as those who worked for Defendants as servers. Defendants have not identified, and the Court does not perceive, any meaningful fact that would distinguish Defendants' conduct towards the named plaintiffs from Defendants' conduct toward the rest of the class. Thus, the named plaintiffs' claims are typical of the class as a whole.

### 4. Adequacy

Lead Plaintiffs' counsel, Colleen M. McLaughlin, is an experienced employment law attorney, and has been lead trial counsel on three other wage and hour class actions, two of which resulted in settlements favorable to the plaintiffs. *See* R. 189-25. Defendants do not challenge Plaintiffs' counsel's adequacy. The Court finds that Ms. McLaughlin meets the adequacy requirement.

Additionally, the Court does not perceive there to be any conflict between the named plaintiffs, Ms. Berger and Mr. Rendak, and Defendants have identified none. Thus, the Court finds they are adequate class representatives.

7

### 5. Predominance

"There is no mathematical or mechanical test for evaluating predominance." *Messner*, 669 F.3d at 814. "Rule 23(b)(3)'s predominance requirement is satisfied when common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication." *Id.* at 815.

Here, whether Defendants' policy of withholding 3.25% of tips to pay credit card processing fees complied with the FLSA and IMWL is the primary question regarding Defendants' potential liability. Defendants have not identified any questions regarding any individual plaintiff's liability that would undermine this commonality, and the Court does not perceive there to be any at this time. Thus, this common question predominates over any individual questions.

### 6. Superiority

"Rule 23(b)(3)'s superiority requirement . . . is comparative: the court must assess efficiency [of a class action] with an eye toward other available methods." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 664 (7th Cir. 2015). Factors used to evaluate superiority include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desireability or undesireability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

Here, the clear predominance of the question of the legality of Defendants' tip retention policy makes class treatment of this question the superior method of adjudication. Defendants do not suggest a more efficient alternative.

### C. Sub-Class Three: Sidework Claim

#### 1. Numerosity

Twelve table-servers have stated in declarations that Defendants required all table-servers to perform sidework at the lower wage for tipped employees. Defendants employed 41 individual table-servers in the month of December 2013 alone. As discussed above regarding the tip refund class, this is sufficient to satisfy the numerosity requirements.

#### 2. Commonality

The declarations from table-servers stating that Defendants required them to perform sidework are sufficient evidence to show a common question of law. Other district courts have certified classes on such claims. *See Grosscup v. KPW Mgmt., Inc.*, 261 F. Supp. 3d 867, 875 (N.D. Ill. 2017) (citing cases).

Defendants argue that "Plaintiffs cannot rely merely on a conclusory statement that servers were required to spend a 'substantial' amount of time engaged in untipped work," because "Plaintiffs must provide evidence that servers performed related side work in excess of 20% of their workdays." R. 195 at 23 (citing *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1076 (7th Cir. 2014) ("A tipped employee is entitled just to the sub-minimum, tip credit wage rate unless he is doing either unrelated non-tipped work or related non-tipped work in excess of 20

9

percent of his work-day.")). But at least two of the table-server declarations state that they spent at least two hours out of every eight or nine hour shift on side work, which is more than 20%. *See* R. 189-11 at ¶¶ 6, 79-80; 189-14 at ¶¶ 6, 76-77.

Defendants also argue that "individual damage calculations will inevitably overwhelm questions common to the class." R. 195 at 24. Defendants, however, do not explain why this is so, and the Court does not perceive this to be the case. Plaintiffs have identified a common question of law, i.e., the legality of Defendants' sidework policy. It will certainly simplify the litigation to certify a class for the purpose of answering this question. To the extent the damages portion of the case becomes unwieldy to address collectively, the Court can hold individual damage hearings. *See Gomez v. PNC Bank*, 306 F.R.D. 156, 169-70 (N.D. Ill. 2014), *aff'd sub nom*, *Bell v. PNC Bank*, 800 F.3d 360, 379-80 (7th Cir. 2015).

### 3. Typicality

As with the tip refund class, the sidework claim arises from Plaintiffs' work as table-servers employed by Defendants. Since the class is defined as those who worked as table-servers for Defendants, Plaintiffs' claims are typical of the class.

### 4. Adequacy

The Court's analysis of Plaintiffs' counsel's and the named plaintiffs' adequacy with respect to the tip refund class applies equally to the putative sidework class.

### 5. Predominance

Defendants argue that the question of the legality of Defendants' sidework policy does not predominate because individual servers' responsibilities for sidework varied from shift to shift. While common sense says this is likely to be the case, it does not change the fact that the legality of Defendants' policy to improperly compensate sidework is the threshold question in this case. For this reason, it predominates over questions of whether any individual server actually performed a sufficient amount of sidework on a given shift to trigger liability.

### 6. Superiority

As with the tip refund class, the clear predominance of the question of the legality of Defendants' tip retention policy makes class treatment of this question the superior method of adjudication. Again, Defendants do not suggest a more efficient alternative.

## II. Collective Actions

### A. Legal Standard

"The Seventh Circuit has not yet established criteria for determining whether employees are 'similarly situated' for purposes of the FLSA, but the majority of courts . . . have adopted a two-step process for determining whether an FLSA lawsuit should proceed as a collective action." *Gallardo v. Scott Byron & Co.*, 2014 WL 126085, at *17 (N.D. Ill. Jan. 14, 2014) (citing cases). "The first step focuses on 'determin[ing] whether 'similarly situated' plaintiffs do in fact exist,'" such that a notice can be sent to them. *Id.* (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d

Cir. 2010), and citing *Zavala v. Wal Mart Stores, Inc.*, 691 F.3d 527, 536 n.4 (3d Cir. 2012)); *see also Brown v. Club Assist Road Serv. U.S., Inc.*, 2013 WL 5304100, at *12 (The first step requires "the court [to] make[] an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." (citing *Myers*, 624 F.3d at 555)). The named plaintiffs "can show that the potential claimants are similarly situated by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Strait v. Belcan Engineering Group, Inc.*, 911 F. Supp. 2d 709, 718 (N.D. Ill. 2012) (citations omitted). Other courts in this District have described this "modest factual showing" as a "low standard of proof," *Bergman v. Kindred Healthcare, Inc.*, 2013 WL 2632596, at *3 (N.D. Ill. June 11, 2013), and requiring only a "minimal showing." *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008).

After notice has been sent and additional plaintiffs have opted in to the lawsuit, "the second step focuses on 'whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs.'" *Gallardo*, 2014 WL 126085, at *17 (quoting *Myers*, 624 F.3d at 555, and citing *Zavala*, 691 F.3d at 536 n.4). In order to make this determination, courts consider "'(1) whether the plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns.'" *Gallardo*, 2014 WL 126085, at

*17 (quoting *Strait*, 911 F. Supp. 2d at 718). "'This stage is where the certification becomes more akin to the familiar Rule 23 class certification standard . . . .'" *Gallardo*, 2014 WL 126085, at *17 (quoting *Brown*, 2013 WL 5304100, at *12).

### B. Sub-Classes Two & Three: Tip Refund & Sidework Claims

Defendants argue that the Court should apply an "intermediate level of scrutiny" because "the parties have conducted significant discovery." R. 195 at 14-15. Regardless of whether this is the appropriate level of scrutiny at this point in the litigation, the Court has already applied what amounts to an intermediate level of scrutiny in certifying Sub-Classes Two and Three pursuant to Rule 23. *See Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013) ("[T]here isn't a good reason to have different standards for the certification of the two different types of action, and the case law has largely merged the standards . . . ."). On that basis, the Court finds that the proposed class members are similarly situated to the named plaintiffs such that it is appropriate to conditionally certify the collective action and to send notice to the members of Sub-Classes Two and Three.

### C. Sub-Class One: Tip Credit Notification Claim

In order to pay a lower wage to tipped employees that complies with the FLSA, employers are required to inform their employees of the relevant FLSA provisions in 29 U.S.C. § 203(m) (the provisions permitting lower wages for tipped employees "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection"). Defendant Cortes testified that he is solely responsible for informing new servers

13

about Defendants tipping practices, but he never advised the servers of the FLSA provisions. *See* R. 189-5 at 31-32 (119:24–121:25). Cortes also testified that he does not know what a "tip credit" is under the FLSA and has never received training regarding application of the statute. *See id.* at 27 (103:25–104:5). Since there is evidence that Defendants' method of informing servers of their rights under the FLSA was inherently deficient, this deficiency applied to all servers as though Defendants had a policy of insufficient notice. This is sufficient evidence to establish that those who opt in will be similarly situated to the named plaintiffs.

## D. Statute of Limitations

Defendants also contend that any potential members of the "tip refund" collective action who have not yet opted in are barred by the two year statute of limitations. A three-year statute of limitations applies to a willful violation. But Defendants argue that a "bare allegation" of willfulness is not sufficient to meet the "heightened" burden of the second step of collective action certification, and Plaintiffs must "provide some evidence." R. 195 at 19 n.15. Plaintiffs have presented such evidence—namely, evidence that Defendants withheld 3.25% of tips to cover what appears to be a 2% processing charge. Defendant Cortes testified that the "tip refund" policy was intended to cover credit card processing charges, *see* R. 189-5 at 56 (217:11-12), but clearly it went well beyond that. This is sufficient evidence to justify sending a notice to potential class members.

14

## Conclusion

For the foregoing reasons, Plaintiffs' motion to certify the classes and collective actions identified in Plaintiffs' motion, R. 188, is granted. To the extent not already produced, Defendants must produce to Plaintiffs' counsel by March 23, 2018, in an agreed upon electronic format, the names, addresses, phone numbers, email addresses, and dates of employment for all persons employed by Defendants as servers from September 1, 2013 through present. Plaintiffs are permitted to provide the notice to and seek consent from all such individuals using the form found at R. 189-26. Defendants are directed to post copies of document R. 189-26 on an employee bulletin board at its restaurant starting on the same day Plaintiffs' counsel mails the form, and to keep it posted until the close of the opt-in/opt-out period.

Considering the age of this case and motion, the parties' positions on the appropriate date of the close of the opt-in/opt-out period are now obsolete. A status hearing is set for Tuesday, March 20, 2018, at which the parties should be prepared to set that date, and generally update the Court regarding the status of the case.

ENTERED:

_Thomas M Durkin_
Honorable Thomas M. Durkin
United States District Judge

Dated: March 12, 2018