UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JESSICA BERGER and TIMOTHY RENDAK, ET AL., | ) ) ) |
| Plaintiffs, | ) ) ) No. 14 C 8543 |
| v. | ) ) |
| PERRY'S STEAKHOUSE OF ILLINOIS, LLC, HOWARD CORTES, and JEFFREY PAGNOTTA, | ) Judge Thomas M. Durkin ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

In this partial class and collective action, Plaintiffs, who worked as table servers at Perry's Steakhouse and Grille in Oak Brook, Illinois ("Perry's Oak Brook"), allege that Perry's Steakhouse of Illinois, LLC ("PSI"), which operates Perry's Oak Brook, and managers Howard Cortes and Jeffery Pagnotta (PSI, Cortes and Pagnotta collectively, "Defendants") failed to pay them all tips and other compensation owed, required them to perform non-table-service-related work at less than minimum wage, and failed to give them adequate notice of their intent to take a "tip credit" and use a "tip pool" in violation of the Fair Labor Standards Act and the Illinois Minimum Wage Law. Defendants moved for partial decertification of the classes and subclasses previously certified by the Court. R. 354. For the following reasons, that motion is granted in part and denied in part.

## Standard

"Under Section 216(b) of the FLSA, employees may bring a collective action on behalf of themselves and other 'similarly situated' employees against employers who violate the Act's minimum wage or overtime provisions." *Smallwood v. Illinois Bell Tel. Co.*, 710 F.Supp.2d 746, 750 (N.D. Ill. 2010). A collective action under the FLSA is different from a class action certified under Federal Rule of Civil Procedure 23. *Flores v. Lifeway Foods, Inc.*, 289 F.Supp.2d 1042, 1044 (N.D. Ill. 2003). Yet "the case law has largely merged the standards." *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013). As such, district courts treat them as a single class action and apply the Rule 23 standards when deciding whether to decertify a collective action and a class action in one lawsuit. *See Dekeyser v. Tyssenkrupp Waupaca, Inc.*, 860 F.3d 918, 920 (7th Cir. 2017) (noting collective actions "are very similar to the more familiar Rule 23 class actions" and "analyz[ing] the two classes together"); *see also Sanchez v. Roka Akor Chicago LLC*, 2016 WL 74668, at *5 (N.D. Ill. Jan. 7, 2016); *Elder v. Comcast Corp.*, 2015 WL 3475968, at *5 (N.D. Ill. June 1, 2015).

Under Federal Rule of Civil Procedure 23(c)(1)(C), "[a]n order that grants or denies class certification may be altered or amended before final judgment." Indeed, after granting certification, the court "remains under a continuing obligation to review whether proceeding as a class action is appropriate." *Shurland v. Bacci Cafe & Pizzeria on Ogden, Inc.*, 271 F.R.D. 139, 142 (N.D. Ill. 2010). When a party moves to decertify a class, "the party seeking class certification bears the burden of producing a record demonstrating the continued propriety of maintaining the class

action." *Farmer v. DirectSat USA, LLC*, 2013 WL 2457956, at *2 (N.D. Ill. June 6, 2013).

A party seeking class certification must prove that the class meets the four requirements of Rule 23(a) and at least one of the three alternatives provided in Rule 23(b). *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059 (7th Cir. 2016). Rule 23(a) requires numerosity, typicality, commonality, and adequacy of representation. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). And of relevance here, Rule 23(b)(3) requires a finding that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Messner*, 669 F.3d at 811.

## Background[1]

The FLSA and IMWL require employers to pay their employees a minimum wage for each hour of work. 29 U.S.C. § 206; 820 ILCS 105/4(a)(1). But an employer may offset its minimum wage obligations as to a tipped employee by the tips the employee actually receives. 29 U.S.C. § 203(m); 820 ILCS 105/4(a)(1), (c). This offset is known as a "tip credit." Jessica Berger and Timothy Rendak are former servers at Perry's Oak Brook who represent a Rule 23 class of 107 members and opt-in FLSA collective of 29. Each Perry's Oak Brook server is a "tipped employee" as defined by

---

[1] This memorandum opinion and order largely assumes familiarity with the facts of the case. For additional background information, see the Court's March 12, 2018 memorandum opinion and order on Plaintiffs' motion for certification, R. 239, and the Court's December 23, 2019 memorandum opinion and order on the parties' cross motions for partial summary judgment, R. 348.

3

the FLSA and is paid at the Illinois tip credit rate of $4.95 per hour (which is higher than the federal rate of $2.13 per hour). This case stems in part from a credit card offset fee Defendants implemented when Perry's Oak Brook opened in November 2013. That fee acted as a deduction from servers' cash tips and was purportedly used to recoup the expense involved with the nightly cashing out of those tips (the so-called "tip refund"). Defendants terminated this deduction as of October 12, 2014, paying credit card tips through its weekly payroll system instead. Plaintiffs complain that the credit card offset fee policy violated the FLSA and IMWL, because the amounts deducted were more than was necessary to cover the costs associated with the credit card transactions, and that Defendants should lose the "tip credit" and be required to pay minimum wage as a result ("credit card offset fee claim"). Of relevance here, Plaintiffs also brought claims related to: (1) Defendants' failure to provide adequate notice to servers as required by the FLSA[2] of Defendants' intent to take a tip credit and operate a "tip pool" in order to redistribute server tips among tipped employees ("notice claim"); and (2) the untipped "sidework" servers were required to perform at less than minimum wage, in violation of the United States Department of Labor's ("DOL's") so-called "dual jobs regulation," and as explained more fully below ("sidework claim").

On March 12, 2018, this Court granted Plaintiffs' motion for partial class and collective action certification, certifying the following three subclasses as to the notice, credit card offset fee, and sidework claims, respectively:

---

[2] The IMWL does not contain a similar notice provision.

> Sub-Class One – Tip Credit Notification (FLSA): All persons employed by Defendants in the occupation of "Server," from September 1, 2013, to present, who were paid by Defendants at the sub-minimum wage, tip credit rate.
>
> Sub-Class Two – Tip Refund (FLSA, IMWL, and Unjust Enrichment): All persons employed by Defendants as Servers who were paid at the sub-minimum wage, tip credit rate and were subjected to Defendants' "Tip Refund" policy.
>
> Sub-Class Three – Sidework (FLSA, IMWL, and Unjust Enrichment): All persons employed by Defendants as Servers, from September 1, 2013, through Present, who were paid at the sub-minimum wage, tip credit rate and performed Sidework duties.

R. 239.

At the close of discovery, the parties filed cross motions for partial summary judgment on certain claims and issues. The Court denied the parties' cross motions on Plaintiffs' sidework claim, and also denied summary judgment for Defendant as to Plaintiffs' notice and credit card offset fee claims. But the Court granted summary judgment to Plaintiffs as to PSI on the credit card offset fee claim, including to the extent Plaintiffs sought liquidated damages. The Court left to any jury the issue of whether PSI's use of the credit card offset fee policy was willful.

Shortly after the Court's summary judgment ruling and at the Court's direction, the parties filed a joint status report ("Status Report") reflecting (among other things) their agreement that any plaintiff who recovered as a result of Defendants' credit card offset fee violation could not recover for any other FLSA minimum wage violation that may have occurred during the same period. *See* R. 349 at 2 ("Plaintiffs agree that there is no double recovery and that recovery obtained on any of Plaintiffs' remaining claims will commence with the pay period starting on

5

October 12, 2014."). Defendants subsequently filed this motion for partial decertification, arguing that: (1) the sidework claim should be decertified in its entirety; (2) the credit card offset fee class definition should be modified to reflect that the policy giving rise to the claim was terminated as of October 12, 2014; (3) the notice and sidework subclass definitions (the latter only if not decertified) should be modified to limit class membership to servers who performed server duties *after* October 12, 2014 to prevent potential double recovery on either or both such claims and the credit card offset fee claim; (4) the notice claim subclass definition should be further modified to limit membership to those servers who performed server duties and received the allegedly problematic notice before January 2017, when that notice was replaced with a notice the parties agree was lawful; and (5) each subclass definition should be modified to restrict membership to those servers who timely opted in to the FLSA collective action.

## Analysis

The Court analyzes the arguments that are specific to each subclass before examining whether each of the subclass definitions should reflect "opt-in" language.

**I.    Credit Card Offset Fee Claim, Sub-Class Two**

Defendants argue at the outset that the credit card offset fee subclass (Sub-Class Two) definition should be modified to restrict membership to servers who "performed server duties such that they were subject to the credit card offset fee prior to October 12, 2014," the date on which the parties agree Defendants ceased use of the credit card offset fee policy. R. 354. In response, Plaintiffs contend that

6

Defendants' request is "superfluous," because the current subclass definition already includes only those servers who were "subjected to" the policy in dispute. R. 361 at 2. Plaintiffs are technically correct, but because the modification Defendants seek amounts to a mere clarification, and because Plaintiffs fail to explain how they would be prejudiced by it, the definition will be modified to take into account the October 12, 2014 "cut off" date.

## II. Notice Claim, Sub-Class One

Defendants next seek to restrict membership in the notice subclass (Sub-Class One) to servers who performed server duties between October 12, 2014 (when Defendants ceased their credit card offset fee policy) and the end of 2016, because it is undisputed that Defendants distributed and posted a new, compliant FLSA notice as of January 1, 2017. Defendants argue that the addition of a start date is necessary to account for the fact that a server cannot recover for both a credit card offset fee violation *and* a notice claim violation for any period in which both violations occurred. Defendants cite no authority in support of their argument. For their part, Plaintiffs contend that even though the Court granted them summary judgment on certain aspects of their credit card offset fee claim, and notwithstanding the parties' agreement that servers cannot obtain double recovery, servers remain free to pursue relief under multiple theories. Plaintiffs point to Federal Rule of Civil Procedure 54(b), which they argue makes clear that the Court's determination on the credit card offset fee claim remains non-final and subject to change. *See* R. 361 at 3-4 (the Court's decision may be modified "at any time before the entry of judgment adjudicating all

7

the claims and all the parties' rights and liabilities") (quoting Fed. R. Civ. P. 54(b)). Plaintiffs also argue that there is no guarantee that all aspects of the Court's summary judgment ruling (or any jury verdict) would be upheld on appeal even if it became final, making it at least possible that restricting a server's membership to the credit card offset fee subclass alone for the period preceding October 2014 could negatively (and unfairly) impact that server's right to recovery. *Id.* at 4 (raising hypothetical in which Plaintiffs lose an appeal on liquidated damages for the credit card offset fee claim, but win a decision on liquidated damages on the notice claim). Defendants did not respond to Plaintiffs' arguments. In any case, the Court agrees that modification of the notice subclass as a result of the Court's partial ruling on the credit card offset fee claim would be improper for the reasons Plaintiffs assert, and for the additional reason that Defendants' concerns relate to the damages, as opposed to liability, phase of the case. Accordingly, the Court declines to modify the notice subclass to reflect the "start date" Defendants propose.

But for the same reasons the Court ordered the modification of the credit card offset fee subclass definition to take into account the date Defendants terminated the problematic policy, the notice claim subclass definition shall also reflect the timing of that modification. Indeed, Plaintiffs do not meaningfully argue against the modification, and concede that Defendants' form of notice became FLSA-compliant as of 2017.

**III. Sidework Claim, Sub-Class Three**

8

Defendants next contend that the sidework claim should be decertified, or, in the alternative, and as Defendants argued with respect to Sub-Class One, that Sub-Class Three should be modified to reflect a start date commencing only after Defendants abandoned their credit card offset fee policy.

As discussed more fully in the Court's previous orders, the sidework claim arises from Plaintiffs' allegations that Defendants unlawfully pay servers less than minimum wage for untipped opening and closing "sidework"[3] that is either: (1) unrelated to their tipped server duties; or (2) related to those duties but in excess of 20% of their total workweek hours in violation of the so-called "80/20 rule."[4] There is

---

[3] Plaintiffs expressly do not seek compensation for sidework performed while guests are present (i.e., "running" sidework). R. 333 at 19.

[4] As explained in the Court's previous orders, because the FLSA does not explain how a "tip credit" applies to an employee who performs both tipped and untipped work, the DOL promulgated the "dual jobs regulation," which provides that where an employee maintains dual job duties, the employer must pay minimum wage for those duties for which the employee does not receive a tip. 29 C.F.R. § 531.56(e). The regulation distinguishes a dual job (or "unrelated" duties) from "related" duties, which, in the case of a waitperson, include "time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses," and other similar duties that "need not by themselves be directed toward producing tips." *Id.* Accordingly, an employer can take a tip credit (and need not pay minimum wage) for an employee who performs "related" but non-tipped duties provided that the employee performs them only "occasionally" or "part of [the] time." *Id.*; *see also Schaefer v. Walker Bros. Enterprises, Inc.*, 829 F.3d 551, 554 (7th Cir. 2016). The DOL indicated in its 1988 Field Operation Handbook that such duties are performed more than "occasionally," and thus "no tip credit may be taken," if an employee spends "in excess of 20 percent" of his time on the untipped work. U.S. Dep't of Labor, Wage & Hour Div., 1988 Handbook § 30d00(e) (Dec. 9, 1988). For 30 years thereafter, courts interpreted this provision to require employers to pay tipped employees who spend more than 20% of their time performing related, untipped duties the regular minimum wage for that time (the so-called "80/20 rule"). But in November 2018, the DOL issued an opinion letter purporting to abolish the limitation on the amount of duties related to a tip-producing occupation that may be performed so long as such related duties are performed "contemporaneously" or within "a reasonable time"

9

no dispute that Defendants require servers to perform sidework. But in Defendants' view, the evidence shows that issues related to individualized liability and damages determinations preclude continued certification. More specifically, Defendants argue that the lack of any written policy directing servers to spend more than 20% of their time on sidework, lack of documentation of time spent on sidework and varying testimony regarding same, and the fluctuating lengths of servers' shifts, mean that Plaintiffs cannot demonstrate either commonality or predominance as Rule 23 requires. Defendants go so far as to suggest that servers who spent more than 20% of their workweek on unrelated sidework did so by choice. *See* R. 354 at 6 ("the side work claims as articulated by Plaintiffs arise solely from the amount of time they allege that any particular server unilaterally (and uniquely) undertook to work"). And Defendants make much of the fact that the Court called out the disparities regarding time spent on sidework in denying Plaintiffs' summary judgment motion on the sidework claim. But those disparities do not compel decertification, and neither does the fact that the Court denied summary judgment.

Indeed, the Court already rejected Defendants' arguments that individualized shift lengths, changing responsibilities, and the speed at which any one server performed his duties preclude certification. *See* R. 239 at 11. And Plaintiffs have

---

before or after "direct-service duties." U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA 2018-27 (Nov. 8, 2018), 2018 WL 5921455, at *2-3; U.S. Dep't of Labor, Wage & Hour Div., Revised Handbook § 30d00(f)(2) (Feb. 15, 2019). This Court joined several others that declined to give the DOL's new interpretation any deference, and upheld the viability of the 80/20 rule. Accordingly, employers requiring employees to perform non-tipped unrelated work and/or non-tipped related work in excess of 20% of their workweek remain obligated to pay minimum wage for that time.

produced evidence from which a jury could infer that servers are expected to—and do—perform sidework tasks for most, if not all, of the time before customers arrive, and that such opening sidework alone exceeds 20% of a given workweek. In fact, the Court agrees with Plaintiffs that, if anything, their case for certification has only grown stronger with discovery. By way of example, and in addition to the checklists setting forth the various tasks servers may be asked to perform at opening and closing, declarations and deposition testimony produced during discovery show that time spent on opening sidework alone was lengthy and frequently in excess of 20% of a given workweek, and that Defendants' mantra was "if there is time to lean, there is time to clean." *See, e.g.*, R. 313 ¶¶ 68-69 and Exs. 40 & 57. From this, a reasonable jury could readily conclude that Defendants expected servers to constantly be working. And if that was Defendants' policy, it is enough to support Rule 23 class certification even though the policy was not written. *See Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 375 (7th Cir. 2015) (whether defendant had an "unofficial policy or practice" requiring employees to work off-the-clock overtime hours was a common question capable of class-wide resolution including because "plentiful evidence" suggested that "many employees worked overtime without proper compensation").

Further, although the Court declined to conclude as a matter of law that the time a given server spends on opening sidework can be calculated by comparing the time he clocks in with the time his first table is assigned, nothing prevents a juror from concluding that this was generally the case (even if he or she concludes that it

11

was not *always* the case). Nor will the Court fault Plaintiffs for failing to keep minute-to-minute records of sidework of their own accord.

Finally, Defendants argue that Plaintiffs cannot rely upon the testimony of a few servers as representative of the class, citing several cases in an effort to support that contention. But those cases largely concern many more claimants spread across larger (or different) facilities or locations, who hold varying positions, are subject to different policies, and in many instances have different supervisors. *See, e.g.*, *Solsol v. Scrub, Inc.*, 2017 WL 2285822, at \*9 (N.D. Ill. May 23, 2017) (representative testimony not feasible where 750 opt-in employees of O'Hare Airport worked pursuant to different service contracts, had different supervisors, were subject to different policies, and performed different job duties (among other things)); *Epenscheid v. DirectSat USA, LLC*, 705 F.3d 770 (7th Cir. 2013) (affirming decertification of class of 2,341 technicians who installed and repaired home satellite dishes in suit for overtime pay where class members were paid on a piece rate basis, worked at varying locations, and recorded time differently, and finding that as such testimony of a few members may not have been truly "representative" of the class as to damages); *Creal v. Group O, Inc.*, 155 F. Supp. 3d 831, 842 (N.D. Ill. 2016) (differing positions, duties and supervisors in "vast" manufacturing plant counseled toward decertification because employees were not similarly situated). As such, they are easily distinguished from this case, which involves only a single restaurant location and employee position.

In sum, the common threshold question remains whether Defendants' sidework policy was legal. The fact that some evidence supports that certain servers did not spend more than 20% of their time on sidework does not change that fact. And as was the case when the subclass was first certified, that question predominates "over questions of whether any individual server actually performed a sufficient amount of sidework on a given shift to trigger liability." R. 239 at 11. Accordingly, the Court declines to decertify the sidework subclass in its entirety.[5]

And for the reasons outlined above concerning the notice claim subclass and potential double recovery, the Court also declines to modify the sidework subclass definition to take into account the date on which Defendants terminated the credit card offset fee policy.

## IV. Opt-In Language

Finally, Defendants request that each of the subclass definitions be modified to restrict membership to only those servers who have timely opted in. In response, Plaintiffs argue that the addition of the opt-in language to the credit card offset fee and sidework subclass definitions (Sub-Classes Two and Three, respectively) would be improper because those definitions apply to claims under both the FLSA (which requires servers to opt in to the class) *and* IMWL (which does not). The Court notes that the Court-approved class notice clearly indicated that membership in the FLSA

---

[5] Because the Court concludes that certification is proper based on the common (and predominant) question of whether Defendants unlawfully paid servers for time spent on related but untipped sidework in excess of 20% of the workweek, the Court need not also address whether Plaintiffs have established that certification is appropriate on the theory that servers were unlawfully paid for work on unrelated tasks.

13

class was dependent upon a potential class member's timely submission of a completed notice of consent to join the class. *See* R. 189-26. But the definitions can easily be modified to clarify that membership in the subclasses for purposes of the FLSA claims hinges on a member's having timely opted in. And the Court cannot fathom any reason not to provide that additional clarification. The subclass definitions will be modified accordingly.

Plaintiffs also contend that the addition of opt-in language to the notice subclass (Sub-Class One) is unnecessary, because the definition reflects that the notice claim arises solely under the FLSA, and thus the requirement to have opted in is clear. But the Court sees no downside to clarification, and nor have Plaintiffs pointed to any. Therefore, the notice subclass definition will also be modified to include the opt-in language.

\* \* \* \* \*

For the reasons explained above, the subclass definitions are hereby modified as reflected below:

> Sub-Class One – Tip Credit Notification (FLSA): All persons employed by Defendants in the occupation of "Server," from September 1, 2013, to ~~present~~ December 31, 2016, who were paid by Defendants at the sub-minimum wage, tip credit rate, and timely opted in to the collective action.
>
> Sub-Class Two – Tip Refund (FLSA, IMWL, and Unjust Enrichment): All persons employed by Defendants as Servers who were paid at the sub-minimum wage, tip credit rate and were subjected to Defendants' "Tip Refund" policy that terminated effective October 12, 2014, and, with respect to the FLSA claim, timely opted in to the collective action.
>
> Sub-Class Three – Sidework (FLSA, IMWL, and Unjust Enrichment): All persons employed by Defendants as Servers, from September 1, 2013, through Present, who were paid at the sub-minimum wage, tip

credit rate and performed Sidework duties<u>, and, with respect to the FLSA claim, timely opted in to the collective action</u>.

## Conclusion

For the reasons stated, Defendants' motion for partial decertification, R. 354, is granted in part and denied in part as specified above.

ENTERED:

*Thomas M Durkin*

_____

Honorable Thomas M. Durkin
United States District Judge

Dated: October 1, 2020